Todd NOMMENSEN, Plaintiff-Appellant-Petitioner,

v.

AMERICAN CONTINENTAL INSURANCE COMPANY and Saint
Mary's Medical Center, Inc., a Wisconsin corporation,
Defendants-Respondents.

Supreme Court

*No. 99–3018. Oral argument April 30, 2001.—Decided July
12, 2001.*

2001 WI 112

(Also reported in 629 N.W.2d 301.)

For the plaintiff-appellant-petitioner there was a brief by *John Barry Stutt* and *Stewart, Peyton, Crawford, Crawford & Stutt*, Racine, and oral argument by *John Barry Stutt*.

For the defendants-respondents there was a brief by *John A. Nelson, Timothy W. Feeley* and *von Briesen, Purtell & Roper, S.C.*, Milwaukee, and oral argument by *John A. Nelson*.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *Nommensen v. American Continental Insurance Co.*, 2000 WI App 230, 239 Wis. 2d 129, 619 N.W.2d 137, which affirmed a judgment by the circuit court for Racine County, Richard J. Kreul, Judge. The case involves an alleged error in the jury instructions in a medical negligence trial. The sole issue is whether the circuit court erred in failing to grant the plaintiff's request to modify the standard jury instruction on the ordinary burden of proof in a civil case by substituting the word "probability" for the word "certainty."

¶ 2. The court of appeals affirmed the circuit court's decision to give the standard instruction. Wisconsin JI—Civil 200 (civil jury instruction 200 or

instruction 200) states the quantum of evidence required in an ordinary civil case—that is, "the greater weight of the credible evidence." It also provides a standard for the degree of certitude required of the fact finder—that is, "reasonable certainty." These two elements are combined in the second sentence of the instruction, which we place in context:

> The burden of proof. . .rests upon the party contending that the answer to a question should be "yes." This burden is to satisfy you *to a reasonable certainty* by the greater weight of the credible evidence that "yes" should be the answer.

Wis JI—Civil 200 (emphasis added).

¶ 3. The plaintiff-petitioner contends that this instruction is ambiguous or confusing and constitutes an erroneous statement of the burden of proof. He argues that the problem would be solved by replacing the word "certainty" in the instruction with the word "probability."

¶ 4. In making this argument, the petitioner raises important and disquieting questions that have been debated in this court for more than a century. We take these questions seriously. Yet, we are not convinced that the present jury instruction on the ordinary burden of proof is erroneous as a matter of law, that the petitioner's formulation of a new instruction would resolve the suggested dilemma, or that the petitioner has made the case for a new trial. We are especially convinced that this court should not assume the responsibility of writing a new jury instruction on the burden of proof. Accordingly, we affirm the decision of the court of appeals.

¶ 5. As we reach this conclusion, we respectfully urge the Wisconsin Civil Jury Instructions Committee

to revisit Wis JI—Civil 200 to explore whether the instruction can be improved without abandoning precedent on the two-element approach to the ordinary burden of proof.

¶ 6. The petitioner fails to persuade us to grant the specific relief he requested—a new trial on the issue of liability. However, the issue of whether instruction 200 is a satisfactory instruction is well developed in the parties' briefs and is of such statewide import that it requires our attention. We are mindful that we must maintain a wide-angle view of the instruction and its role in assisting juries to reach the proper answers to verdict questions.

### FACTS & PROCEDURAL HISTORY

¶ 7. Todd Nommensen was a patient for chest surgery at St. Mary's Medical Center in Racine. He claims that during his recovery, he suffered nerve damage when he received an injection of the pain medication Toradol in the front of his right thigh. He contends that the front of the thigh is an improper body location to administer an injection because there is a nerve that runs across the leg that can be struck by a needle. He alleges that the pain and numbness resulting from the nerve damage is particularly troublesome to him because he is blind and the injury interferes with his non-sight sensory perceptions.

¶ 8. When Nommensen filed proposed jury instructions with the circuit court, he asked the court to replace the word "certainty" with the word "probability" in civil jury instruction 200 on the ordinary burden of proof. The circuit court declined to do so.

¶ 9. Thus, the circuit court charged the jury with instruction 200 without modification. This instruction read as follows:

The burden of proof, other than on question ___ (e.g., comparison of negligence) and the damage questions in the verdict, rests upon the party contending that the answer to a question should be "yes." This burden is to satisfy you to a *reasonable certainty* by the greater weight of the credible evidence that "yes" should be the answer.

By the greater weight of the evidence is meant evidence which when weighed against evidence opposed to it has more convincing power. Credible evidence is evidence which in the light of reason and common sense is worthy of your belief.

If you have to guess what the answer should be after discussing all evidence which relates to a particular question, then the party having the burden of proof as to that question has not met the required burden.

Wis JI—Civil 200 (emphasis added).[1]

¶ 10. The jury was then asked to answer three questions in a special verdict. The jury answered "yes" to the question whether St. Mary's was negligent through its employees. The jury answered "no" to the question whether St. Mary's negligence caused injury to Nommensen. Finally, the jury wrote that $95,000 would "fairly and adequately compensate" Nommensen "for past and future pain, suffering and disability."

¶ 11. On appeal, Nommensen raised three issues. All were rejected by the court of appeals.

---

[1] The circuit court used the version of Wis JI—Civil 200 that was in effect at the time of Nommensen's trial in 1999, the 1991 version. The instruction has changed slightly since then, with a revision in the year 2000. The first sentence of the instruction now reads: "The burden of proof on questions ___ rests upon the party contending that the answer to a question should be 'yes.' " The recent change does not affect this case.

¶ 12. First, the court of appeals ruled that the circuit court properly admitted testimony from nurse Ellen Buggy on behalf of St. Mary's about certain properties of Toradol and its propensities for causing discomfort or harm even when properly injected. Nommensen had argued that this testimony spoke to a superseding cause for his injury which St. Mary's had not pled as an affirmative defense. Second, the court ruled that the circuit court properly instructed the jury when it used Wis JI—Civil 200 without modification. Third, the court ruled that the five-sixths verdict requirement had been met, despite dissents by various jurors on all three verdict questions.

¶ 13. Only the second issue is before this court. The court of appeals indicated that it was bound by precedent on the validity of the burden of proof jury instruction. *Nommensen*, 239 Wis. 2d 129, ¶ 16. However, Presiding Judge Richard S. Brown wrote a lengthy concurring opinion suggesting that this court reevaluate the use of the phrase "reasonable certainty" within Wis JI—Civil 200. *Id.* at ¶¶ 25–48 (Brown, P.J., concurring). Judge Brown's concurrence weighed the pros and cons of the current instruction and found it wanting. His exegesis on the subject requires a thoughtful response.

## ANALYSIS

¶ 14. This case presents a single issue for our review: Did the circuit court erroneously instruct the jury when it used Wis JI—Civil 200, the standard civil jury instruction on the ordinary burden of proof?

¶ 15. This issue is of great import to all civil trials in this state because the focus of criticism applies not only to the ordinary burden of proof (instruction 200) but also to the middle burden of proof (Wis JI—Civil

205). Thus, the legal issue posed must be analyzed against the backdrop of all civil litigation.

¶ 16. Wisconsin JI—Civil 200 embodies two related elements: (1) degree of certitude and (2) quantum of evidence. *State ex rel. Brajdic v. Seber*, 53 Wis. 2d 446, 448, 193 N.W.2d 43 (1972). There appears to be no dispute that the appropriate quantum of evidence in an ordinary civil case is "the greater weight of the credible evidence." This expression of the required quantum of evidence "is an exact synonym for 'fair preponderance' and much more understandable by the average juror." Wis JI—Civil 200 cmt. (citing *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 299, 294 N.W.2d 437 (1980)).

¶ 17. The criticism of the instruction is thus pointed toward the other element—the degree of certitude. Nommensen argues in essence that the present instruction is confusing, potentially misleading, and substantively wrong. In this criticism he is supported by Judge Brown and a provocative article by Attorney Alan E. Gesler. Alan E. Gesler, *The Burden of Proof: How Certain is Reasonable?*, 14 The Verdict 11 (1991).

## HISTORICAL ANALYSIS

¶ 18. Nommensen argues that the precedent supporting use of the phrase "reasonable certainty" is based on an erroneous understanding of the law. He is joined in this criticism by Judge Brown and Attorney Gesler.

¶ 19. The current version of Wis JI—Civil 200 "Burden of Proof: Ordinary" dates from 1972. It follows an earlier version of the instruction adopted by the Wisconsin Civil Jury Instructions Committee in 1960. The committee stated in both its 1960 and 1972 comments to instruction 200 that the phrase "satisfied to a

reasonable certainty" had been used since *Kausch v. Chicago & Milwaukee Electric Railway Co.*, 176 Wis. 21, 26, 186 N.W. 257 (1922).

¶ 20. In 1967 in *Savina v. Wisconsin Gas Co.*, Justice E. Harold Hallows wrote for the court:

> In this type of civil case the burden of the plaintiff is only to satisfy the jury to a reasonable certainty. The plaintiff is not required to remove all uncertainty. *Kausch v. Chicago & M.E. Ry. Co.* (1922), 176 Wis. 21, 186 N.W. 257. However, in instructing generally on burden of proof the court correctly informed the jury that it was to be satisfied or convinced by a fair preponderance of the evidence to a reasonable certainty.

36 Wis. 2d 694, 703, 154 N.W.2d 237 (1967) (citation omitted).

¶ 21. By January 4, 1972, Justice Hallows had become Chief Justice, and on that date he wrote in *State ex rel. Brajdic v. Seber*:

> Every standard burden of proof, other than the standard applied to criminal cases, is composed of two elements: (1) The degree of certitude required of the trier of the fact, *i.e.*, reasonable certainty, and (2) either the quantity of the evidence, *i.e.*, the greater weight or convincing power, or the quality of the evidence, *i.e.*, clear, satisfactory, and convincing.

53 Wis. 2d at 448.

¶ 22. This is very close to what Justice Hallows had written in 1960 in *Kuehn v. Kuehn*: "We do not believe there is any substantial difference in the two statements of the rule, both have two elements, reasonable certainty and the required quantity and quality of

the evidence." 11 Wis. 2d 15, 29–30, 104 N.W.2d 138 (1960).

¶ 23. In *Kuehn*, Justice Hallows quoted from *Will of Ball: Ball v. Boston*, 153 Wis. 27, 35, 141 N.W. 8 (1913), to the effect that "in ordinary civil matters the person on whom the burden of proof rests may rely upon evidence establishing the facts to a reasonable certainty," but in specific civil cases with a higher burden, such as " 'where fraud is the gist of the matter, then he must go further,—not to the extent of establishing the charge with the highest degree of certainty, but to that one which rests, not only in reasonable certainty, but on evidence which is clear and satisfactory.' " *Kuehn,* 11 Wis. 2d at 29 (quoting *Ball*, 153 Wis. at 35).

¶ 24. We do not know whether the committee on civil jury instructions adopted the analysis of Justice Hallows from *Kuehn* in 1960 or *Brajdic* in 1972, or whether Justice Hallows borrowed from the work of the committee, which was created and had been working since 1959; but there is certainly an overlap of analysis and wording in Wis JI—Civil 200.

¶ 25. The instruction on the ordinary burden of proof has remained essentially unchanged since 1972.[2]

---

[2] Wisconsin JI—Civil 200 has undergone a variety of minor changes since its inception. According to the instruction's comment, it was first approved in 1972 and underwent changes in 1989, 1991, and 2000, Wis JI—Civil 200 cmt, though the Wisconsin State Law Library also holds a Wis JI—Civil 200 published in 1960. The 1960 instruction differs significantly from the post–1972 instructions, but it too contains the phrase "to a reasonable certainty, by the greater weight of the credible evidence."

The 1989 revision added the current third paragraph of the instruction. The 1991 revision added the word "your" to the last

It was specifically embraced by this court in *Victorson v. Milwaukee & Suburban Transportation Corp.*, 70 Wis. 2d 336, 356–57, 234 N.W.2d 332 (1975). Justice Leo Hanley, the author of *Victorson*, was a member of the court when it decided both *Savina* and *Brajdic*. He cited *Savina* in his analysis. *Victorson*, 70 Wis. 2d at 357.

¶ 26. We think the Wisconsin Civil Jury Instructions Committee was standing on solid ground when it commented that "The Committee believes the term 'reasonable certainty' has been firmly established in our case law and accurately reflects the degree of certitude jurors must reach in answering verdict questions." Wis JI—Civil 200 cmt.

¶ 27. The linkage between the old preponderance standard and "reasonable certainty" predates *Kausch*, as evidenced in *Will of Ball*. For example, in *Grotjan v. Rice* in 1905, the court observed:

> What is meant by "preponderance of the evidence," the manner in which the jury should proceed in solving disputed propositions on evidence, and the degree of certainty to which they should arrive before rendering a verdict, are elementary. . . .The term "preponderance of the evidence" suggests the quality of outweighing in convincing power. So it means preponderance in the convincing power of the evidence. In the orderly way of determining the truth from evidence, the jury first consider the same and determine on which side of the dispute there is the greater weight thereof, the more convincing indications as to where the truth lies. They next

sentence of the second paragraph. Finally, the 2000 revision changed the format of the first sentence of the instruction. None of these revisions is particularly pertinent to this case, but they underscore the civil instruction committee's attention to detail.

determine whether such greater indications are sufficiently convincing to satisfy them of the truth of the matter, not beyond a reasonable doubt, for no such degree of certainty in civil cases is required,.. .but satisfied of the truth to a reasonable certainty. That doctrine has been frequently announced in this court.

124 Wis. 253, 258, 102 N.W. 551 (1905) (citations omitted).

¶ 28. Favorable reference to reasonable certainty was reiterated in *Thoma v. Class Mineral Fume Health Bath Co.* in 1943, where the court approved an instruction that read:

"If you are convinced by the preponderance of the evidence to a reasonable certainty that you should answer this question 'Yes,' then make that your answer. If you are not so convinced, your answer to this question should be 'No'."

244 Wis. 347, 355, 12 N.W.2d 29 (1943).

¶ 29. In *Kausch* this court emphasized the importance of the phrase "reasonable certainty":

Error is assigned because the court did not charge the jury with reference to the burden of proof. The questions were so framed that the burden of proof was on the affirmative side in each instance. With reference to each question the jury were told that before they could return an affirmative answer they must be satisfied to a reasonable certainty by a consideration of all the evidence that the fact inquired about existed. If not so satisfied, they were directed to answer the question "No." This most effectually placed the burden of proof upon the party required to prove the affirmative of each question propounded, and made a charge with reference to the burden of proof unnecessary. The

145

trial judge, in his opinion upon the motions after verdict, stated that this was his uniform practice, and expressed the opinion that it was a better and safer practice than to attempt to define the terms "burden of proof" and "preponderance of evidence." It appears to be a simple and effective way of impressing upon the jury the rule which should govern them in arriving at their determination, and rendered an instruction with reference to the burden of proof unnecessary.

176 Wis. at 26. *Kausch* has drawn criticism for straying from the two-element analysis of *Brajdic*. The *Kausch* approach may not square entirely with the two-element analysis, but it certainly does not invalidate "reasonable certainty" as an essential element of the burden of proof.

¶ 30. Other cases could be cited. Consequently, we disagree with the criticism that "reasonable certainty" is not firmly established in our case law, or that it is not well supported by the cases that adopted it. Reasonable certainty is one of the two essential elements of the ordinary burden of proof in this state.

## POTENTIAL TO MISLEAD

¶ 31. A more serious criticism of Wis JI—Civil 200 is that it is misleading as written, that it confuses the jury as to the plaintiff's burden of proof. This criticism is best summarized by Judge Brown when he writes that "using the term 'reasonable certainty' in the instruction creates too high of a risk that jurors will hold a plaintiff to a higher burden of proof than intended." *Nommensen*, 239 Wis. 2d 129, ¶ 25 (Brown, P.J., concurring).

¶ 32. Both Judge Brown and Attorney Gesler turn to dictionary definitions of certainty. Gesler cites *Black's Law Dictionary* 205 (5th ed. 1979) for the definition that certainty means "absence of doubt." Gesler, *supra*, at 12. Judge Brown quotes *The Random House Dictionary of the English Language, Unabridged* 339 (2d ed. 1987) that certainty means "an assured fact" and "without a doubt." *Nommensen*, 239 Wis. 2d 129, ¶ 27 (Brown, P.J., concurring). They support their premise with a statistical study from The New England Journal of Medicine. Augustine Kong et al., *How Medical Professionals Evaluate Expressions of Probability*, 315 New Eng. J. Med. 740, 740–44 (1986). Citing this study, Gesler writes that "[u]se of the word certainty produces in the hearer an expectation of probability of over 90%." Gesler, *supra*, at 12. Judge Brown writes of the study:

> The word "certain" had a probability rating of 99%. When the adverb "almost" was added to the adjective "certain," the median moved from 99% to 94%. The data thus points to the unescapable conclusion that words matter and a person being asked to find something to a "certainty" thinks of the task as being asked to find something to a 99% degree of probability or higher.

*Nommensen*, 239 Wis. 2d 129, ¶ 29 (Brown, P.J., concurring) (citations omitted).

¶ 33. Nommensen contends that the term "reasonable certainty" means "without a doubt." He argues that the

> instruction makes no attempt to explain how jurors are to deal with two different, separate pieces of information presented to them: 1) that the jurors must be convinced in their own mind and 2) that

they must be convinced that one side's evidence is probably more true than the other side's. There is no explanation in the jury instruction as to how to weigh the evidence. This absence of explanation creates the very real danger that a juror will use the "reasonable certainty" language as a method by which to analyze the two pieces of information. Presently, a jury can easily understand the instruction to say that unless the plaintiff's evidence is true to a "reasonable certainty" he may not be considered right enough for the plaintiff to win. The use of the term "reasonable certainty" creates too high a danger that jurors will hold the plaintiff to a higher proof standard than intended and that they may believe they need to be satisfied to a greater than required degree of precision.

¶ 34. Judge Brown comes to the same conclusion. He writes:

> I am convinced that a reasonable juror could understand the instruction to say as follows: "Plaintiff's evidence is weighed against the defendant's and the job of deciding whose evidence has more weight is yours. But before you may find that the plaintiff's evidence has more weight, you must first be satisfied that the plaintiff has provided you with evidence that is absolutely true or nearly absolutely true."

*Nommensen*, 239 Wis. 2d 129, ¶ 45 (Brown, P.J., concurring).

¶ 35. Nommensen's solution to all this is to substitute the word "probability" for the word "certainty" in the instruction. He also picks up an idea from the Gesler article that perhaps the mental element should

be dropped from the instruction altogether.[3] He urges the court to rewrite the instruction.

¶ 36. The purpose of a jury instruction is to fully and fairly inform the jury of a rule or principle of law applicable to a particular case. *Grube v. Daun*, 213 Wis. 2d 533, 549, 570 N.W.2d 851 (1997); *Nowatske v. Osterloh*, 198 Wis. 2d 419, 428, 543 N.W.2d 265 (1996). We agree with Judge Brown that the job of an instruction is not only to state the law accurately but also to "*explain* what the law means to persons who usually do not possess law degrees." *Nommensen*, 239 Wis. 2d 129, ¶ 45. Thus, a jury instruction should be as clear and simple as reasonably possible to aid the jury in understanding the law.

¶ 37. The jury instruction committees play a vital role in Wisconsin's system of justice. *Kim v. Am. Family Mut. Ins. Co.*, 176 Wis. 2d 890, 896–97, 501 N.W.2d 24 (1993). Their often unheralded work is indispensable to the successful operation of the courts. The desirability of uniform instructions for most cases is not open to debate because uniformity, supported by scholarship and attention to detail, tends to assure that litigants will be treated fairly and equally in the court system.

¶ 38. Crafting jury instructions is demanding and meticulous work. It invites constructive comment

---

[3] Gesler pointed out that in 1918 this court said that the phrase "reasonable certainty" "is not essential" in a burden of proof instruction. Alan E. Gesler, *The Burden of Proof: How Certain is Reasonable?*, 14 The Verdict 11, 12 (1991) (citing *Sullivan v. Minneapolis, St. Paul & Sault Sainte Marie Ry. Co.*, 167 Wis. 518, 527, 167 N.W. 311 (1918)).

and suggestion so as better to appreciate the clarity and workability of each instruction.

¶ 39. We are impressed with an observation in *Grotjan v. Rice*, 124 Wis. at 258: "Efforts to state elementary principles in ways not found in the books are quite liable to work harm. The better way is not to depart from those definitions which have received judicial approval." We do not mean by this to suggest that the formulations of existing jury instructions cannot be improved. We do mean to say that revising jury instructions on fundamental principles requires caution.

■

¶ 40. It is not the role of the supreme court to draft jury instructions, particularly instructions that have the potential of affecting every civil trial in Wisconsin. We have often referred difficult instruction issues to the jury instruction committees. *State v. Lohmeier*, 205 Wis. 2d 183, 199, 556 N.W.2d 90 (1996); *Nowatske*, 198 Wis. 2d at 449; *State v. Garcia*, 192 Wis. 2d 845, 860 n.6, 532 N.W.2d 111 (1995); *Foley v. City of West Allis*, 113 Wis. 2d 475, 495, 335 N.W.2d 824 (1983).

¶ 41. In this instance, the change petitioner seeks in instruction 200 would require adjustments in many other civil jury instructions. Neither the petitioner nor the respondents have discussed the effect of the proposed change in instruction 200 on other jury instructions.

¶ 42. According to our computer search of the instructions, the words "reasonable certainty" appear in about 60 jury instructions, in addition to Wis JI—Civil 200. Most of these instructions read as instruction 200 does: "to a reasonable certainty by [or "from"] the [or "a"] greater weight of the credible evi-

dence." Wis JI—Civil 107 (Submission on Ultimate Fact Verdict); 108 (Submission on Ultimate Fact Verdict When Court Finds One or More Parties at Fault); 350 (Presumptions: Conflict as to Existence of Basic Fact; Evidence Introduced from Which Nonexistence of Presumed Fact May be Inferred); 352 (Presumptions: Existence of Basic Fact Uncontradicted; Evidence Introduced from Which Nonexistence of Presumed Fact May be Inferred); 353 (Presumptions: Deceased Person was not Negligent); 1001 (Negligence: Fault: Ultimate Fact Verdict); 1023 (Medical Negligence); 1023.8 (Professional Negligence: Chiropractor—Treatment); 1023.10 (Professional Negligence: Dental); 1026 (Bailment: Negligence of Bailee May be Inferred); 1114 (Duty of Preceding Driver to Following Driver: Lookout); 1580 (Comparative Negligence: Plaintiff Driver and One or More Defendant Drivers); 1585 (Comparative Negligence: Plaintiff-Guest and Host-Defendant Negligent); 1590 (Comparative Negligence: Plaintiff-Guest Passively Negligent; Host (or Other Driver) Negligent); 1591 (Comparative Negligence: Guest Passively Negligent; Claims Against and Among Drivers; Apportionment from One Comparative Negligence Question); 1592 (Comparative Negligence: Guest Passively Negligent; Claims Against and Among Drivers; Apportionment of Comparative Negligence from Two Questions); 1600 (Servant: Driver of Automobile (Presumption from Ownership of Vehicle)); 1723 (Enhanced Injuries); 1730 (Damages: Duty to Mitigate; Physical Injuries); 1731 (Damages: Duty to Mitigate); 2501 (Defamation: Private Individual Versus Private Individual, No Privilege); 2507 (Defamation: Private Individual Versus Private Individual with Conditional Privilege); 2509 (Defamation: Private Individual Versus Media Defendant (Negligence Standard)); 2552

151

(Invasion of Privacy: Publication of a Private Matter: Conditional Privilege); 2760 (Bad Faith by Insurance Company (Excess Verdict Case)); 2780 (Intentional Interference with Contractual Relationship); 3725 (Damages: Future Profits); 5001 (Paternity: Child of Unmarried Woman) (recommending burden of proof instruction "[i]f the statistical probability of paternity is 99.0% or higher"); 8060 (Adverse Possession Not Found on Written Instrument (Wis. Stat. § 893.25)).

¶ 43. Other instructions reverse the order of the element of certitude and the necessary quantum of evidence. These instructions read: "by the greater weight of the credible evidence to a reasonable certainty." Wis JI—Civil 1001 (Negligence: Fault: Ultimate Fact Verdict) (also contains an inverted version of the phrase); 1381 (Negligence: Teacher: Duty to Supervise Students); 2006 (Battery: Self-Defense); 2006.5 (Battery: Defense of Property); 2770 (Termination of Dealership (Dealer/Plaintiff—Grantor/Defendant)); 3260 (Strict Liability: Duty of Manufacturer to Ultimate User).

¶ 44. Eliminating the phrase "reasonable certainty" in instruction 200 would affect other instructions in an assortment of ways. Wis JI—Civil 50 (Preliminary Instructions Before Trial) (explaining that burden of proof cannot be met absent "reasonable certainty"); 1026.5 (Bailment: Negligence of Carrier Presumed) ("to a reasonable certainty by a fair preponderance of the evidence that it is more probable"); 1054 (Equipment and Maintenance of Vehicles: Brakes) ("from all of the credible evidence, you are satisfied to a reasonable certainty"); 2610 (Malicious Prosecution: Advice of Counsel as Defense) ("The burden is upon (defendant) to satisfy you to a reasonable certainty. . . ."); 3725 (Damages: Future Profits) (using "reasonable certainty" in numerous ways).

¶ 45. Finally, some comments to existing instructions contain references to the phrase "reasonable certainty" in the context of discussing the applicable burden of proof. *E.g.*, Wis JI—Civil 200 (Burden of Proof: Ordinary); 1006 (Gross Negligence: Defined) (alternative instruction); 2100 (False Imprisonment: Definition); 4000 (Agency: Definition) (recommending burden of proof instruction in certain circumstances).[4]

¶ 46. If we were to rewrite instruction 200, as Nommensen suggests, by substituting the word

[4] In addition, many instructions that relate to the middle burden of proof read: "to a reasonable certainty by [or "from"] evidence that [or "which"] is clear, satisfactory, and convincing." Wis JI—Civil 205 (Burden of Proof: Middle); 2004 (Assault); 2005 (Battery (Physical Harm)); 2151 (Federal Civil Rights Actions: § 1983 Actions); 2500 (Defamation); 2511 (Defamation: Public Figure Versus Media Defendant or Private Figure with Constitutional Privilege (Actual Malice)); 2520 (Defamation: Punitive Damages); 2760 (Bad Faith by Insurance Company (Excess Verdict Case)) (also contains an instruction on the lower burden); 2780 (Intentional Interference with Contractual Relationship) (also contains an instruction on the lower burden); 2800 (Conspiracy: Defined); 2802 (Conspiracy: Proof of Membership); 2804 (Conspiracy: Indirect Proof); 2810 (Conspiracy: Overt Acts); 3074 (Estoppel) (withdrawn instruction; language contained in note for trial judges); 7060 (Protective Placement); 7070 (Commitment of an Alcoholic). Some instructions state the middle burden in a different but substantially similar manner, though also employing the phrase "reasonable certainty." Wis JI—Civil 2155 (Federal Civil Rights: Excessive Force in Arrest (In Maintaining Jail Security)); 7050 (Mentally Ill).

Changing or eliminating the phrase "reasonable certainty" for cases involving the ordinary burden of proof (greater weight of the credible evidence) might also require changing the phrase in cases involving the "middle" burden of proof ("clear, satisfactory, and convincing" evidence). Wis JI—Civil 205. This concern is outside the scope of this case.

"probability" for the word "certainty," we would in effect be deciding to substitute that word in many other instructions. This would require an impact analysis that we are ill equipped to undertake. It would be far better for an expert committee of circuit judges and scholars, working without an artificial deadline, to decide how to accomplish such wide-sweeping changes, if there were a consensus that such changes were warranted.

¶ 47. It is important to keep in mind that Nommensen's proposal to substitute the word "probability" for the word "certainty" in Wis JI—Civil 200 has been rejected by the Wisconsin Civil Jury Instructions Committee in the past. Wis JI—Civil 200 cmt. ("Suggestions have. . .been made to the Committee and to trial judges during instruction conferences that the certainty element ('to a reasonable certainty') should be replaced with the term 'reasonable probability.'. . .The Committee believes that the term 'reasonable certainty' has been firmly established in our case law and accurately reflects the degree of certitude jurors must reach in answering verdict questions."). While the decisions of the civil instructions committee are not binding upon this court, we generally find the committee's work insightful and persuasive.

¶ 48. Another of Nommensen's proposals—to eliminate discussion of the degree of certitude altogether—runs contrary to well-established case law. Even if we were to accept this proposal, the work of rewriting the instructions would be a daunting task. The degree of certitude appears in so many instructions, and is written in so many different ways, that to

follow Nommensen's suggestion would require that we effectuate deep and fundamental revisions in many instructions, as well as minor deletions in others. This is not our institutional role. In addition, this idea of Nommensen's does not square with this state's long-standing two-element approach to the burden of proof. The Wisconsin Civil Jury Instructions Committee also has expressly rejected this proposal.[5] Accordingly, we decline to rewrite instruction 200 in the manner proposed by Nommensen.

## NOMMENSEN'S BURDEN ON APPEAL

¶ 49. Nommensen fails to establish that the giving of instruction 200 constituted an erroneous exercise of discretion by the circuit court in his case. He has not shown that his "substantial rights" were affected by the instruction, which is the burden he is required to meet on appeal.

■

¶ 50. A circuit court has broad discretion when instructing a jury. *White v. Leeder*, 149 Wis. 2d 948, 954, 440 N.W.2d 557 (1989). As a general matter, if we

---

[5] The comment to Wis JI—Civil 200 provides:

> Some have suggested, pointing to decisions predating 1920, that the dual component civil burdens can be abbreviated by simply dropping the mental element. *See Sullivan v. Minneapolis, St. Paul & S.S.M.R. Co.*, 167 Wis. 518, 167 N.W. 311 (1918). The Committee disagrees with such proposals and follows the rationale expressed by the Wisconsin Supreme Court in *Kuehn v. Kuehn, supra*, in which Chief Justice Hallows said:

> The statement of the complete rule of the burden of proof contains both the element of reasonable certainty and some degree of preponderance of the evidence. It is possible the contestant having the burden of proof may have the preponderance of the evidence fair, clear, or otherwise in his favor and still fall short of convincing the jury to a reasonable certainty of the existence of the facts for which he is contending. 11 Wis. 2d at 28.

determine "that the overall meaning communicated by the instruction as a whole was a correct statement of the law, and the instruction comported with the facts of the case at hand, no grounds for reversal exists." *Id.* at 954–55.

¶ 51. Even if we determine that a circuit court has committed an error in administering a jury instruction, we must assess whether the miscue constitutes reversible error, that is, whether the "substantial rights" of a litigant have been affected.

¶ 52. For an error "to affect the substantial rights" of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue. *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727; *Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201; *Martindale v. Ripp*, 2001 WI 113, 246 Wis. 2d 67, 629 N.W.2d 698; *State v. Dyess*, 124 Wis. 2d 525, 543, 547, 370 N.W.2d 222 (1985). A reasonable possibility of a different outcome is a possibility sufficient to "undermine confidence in the outcome." *Dyess*, 124 Wis. 2d at 544–45 (quotation omitted).[6]

---

[6] In previous cases, we have stated the standard for harmless error in jury instruction cases in a variety of ways. *Nowatske v. Osterloh*, 198 Wis. 2d 419, 429, 543 N.W.2d 265 (1996) ("[W]hen the circuit court has given an erroneous instruction or has erroneously refused to give an instruction, a new trial is not warranted unless the error is prejudicial. '[A]n error relating to the giving or refusing to give an instruction is not prejudicial if it appears that the result would not be different had the error not occurred.' "); *Victorson v. Milwaukee & Suburban Transp. Corp.*, 70 Wis. 2d 336, 357, 234 N.W.2d 332

¶ 53. Nommensen did not persuade this court how the circuit court committed error in administering a jury instruction with language that has been in place in this state for more than a century. The circuit court followed an instruction that this court has sanctioned in the past, *Victorson*, 70 Wis. 2d at 357, and it declined to modify the instruction in a way previously rejected by the Wisconsin Civil Jury Instructions Committee. Wis JI—Civil 200 cmt. Under the circumstances presented, we cannot find that the circuit court erroneously exercised its discretion.

¶ 54. Assuming arguendo that the circuit court did commit error in giving in Wis JI—Civil 200, Nommensen has not shown that his substantial rights were affected. He has not shown there is a reasonable possibility that the result of the trial would have been different. He makes minimal argument about the facts and he does not present a cogent analysis of how instruction 200 affected the outcome of his case.[7] Even if Nommensen had argued that his substantial rights

(1975) ("[I]nstructions are to be judged as a whole and prejudicial error will not be found unless the instructions 'would *probably*, not *possibly*, mislead the jury.' ").

Nevertheless, we find that the "reasonable possibility" test applied in the recent cases of this court—*Green, Koffman, Martindale*—correctly describes the proper test to measure whether the substantial rights of Nommensen have been affected.

[7] As the petitioner, Nommensen filed the first brief in this court. Even after the respondents argued in their response brief to this court that Nommensen had failed to discuss the substantial rights standard, Nommensen did not address this issue. Instead, he declined to file a reply brief.

were affected, the jury's finding of negligence upon the part of St. Mary's undercuts his contention.

## CONCLUSION

¶ 55. We conclude that Nommensen has not made a case for granting him a new trial because he did not establish that the circuit court administered an erroneous jury instruction or that if the instruction were error in his case, his substantial rights were affected. We have carefully considered petitioner's argument that there is potential for juror confusion in Wis JI—Civil 200, with respect to the elements of degree of certitude and quantum of evidence. With this in mind, we respectfully request the Wisconsin Civil Jury Instructions Committee to revisit the instruction for a thorough review. We do not necessarily agree with Judge Brown that "the instruction fails miserably." However, we appreciate the spirit in which his message was delivered. We recognize that jury instructions must be designed for the lay people on a jury. We support Alan Gesler's statement that the purpose of all jury instructions is not only to "accurately state the law, but to clearly state the law." Gesler, *supra*, at 12.

¶ 56. Changing "reasonable certainty" to "reasonable probability" in the instruction is not the proper tonic for potential juror confusion and would be inconsistent with precedent. However, we concur with Nommensen that instruction 200 as written is deserving of a thorough review. Such a review should consider all legitimate reformulations of the current instruction, so long as the instruction maintains the two-element approach to the burden of proof.

¶ 57. In examining instruction 200, the committee should make every effort to remedy one of the most troubling aspects of the instruction: the juxtaposition

of the two elements of the burden of proof. The ordinary juror could be misled into thinking that the burden of proof is to a "reasonable certainty." Yet, immediately following that phrase, another seemingly contradictory aspect of the burden of proof is set forth: "by the greater weight of the credible evidence." This juxtaposition has the potential to confuse the ordinary juror. The committee might well revise this instruction in a way that separates the two elements of the burden of proof and that allows an ordinary juror to discern the meaning and interrelation of the two elements.

¶ 58. The goal of any revision or rewrite should be to inform jurors of both elements of the burden of proof in the simplest and most understandable manner, while explaining each concept distinctly and relating the role of each element in deciding verdict questions.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 59. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I join the majority opinion. I wrote a concurrence on the issue of harmless error in *In re the Termination of Parental Rights to Jayton S.: Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶¶ 37–42, 246 Wis. 2d 1, 629 N.W.2d 768 (Abrahamson, C.J., concurring). My views on harmless error expressed in that concurrence apply to the present case as well. Rather than repeat the concurrence verbatim in the present case, I refer the reader to the *Evelyn C.R.* case.

¶ 60. N. PATRICK CROOKS, J. *(concurring)*. I concur in the majority's decision to affirm the court of appeals because, as the majority concludes, Nommen-

sen failed to establish that the circuit court erroneously exercised its discretion in giving Wis JI—Civil 200. Majority op. at ¶ 49. I disagree, however, with the majority's harmless error analysis.

¶ 61. First, I take issue with the majority's standard for harmless error. That standard, which is repeated in four other decisions from this court,[1] is whether there is "a reasonable possibility that the error contributed to the outcome," and that a "reasonable possibility" is one "sufficient to 'undermine confidence in the outcome.' " *Id.* at ¶ 52 (quoting *State v. Dyess*, 124 Wis. 2d 525, 544–45, 370 N.W.2d 222 (1985)). Since the standard for harmless error is the same for civil, as well as criminal, cases (*Town of Geneva v. Tills*, 129 Wis. 2d 167, 184–85, 384 N.W.2d 701 (1986)), it is imperative that the standard be accurately conveyed.

¶ 62. For at least the past 35 years, this court has wrestled with formulating a standard for harmless error. *See, e.g., Pulaski v. State*, 24 Wis. 2d 450, 456–57, 129 N.W.2d 204 (1964); *State v. Spring*, 48 Wis. 2d 333, 339–40, 179 N.W.2d 841 (1970); *Wold v. State*, 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973); *State v. Grant*, 139 Wis. 2d 45, 406 N.W.2d 744 (1987). In an attempt to formulate a single, uniform test for harmless error,

---

[1] *See also Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727; *Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201; *Martindale v. Ripp*, 2001 WI 113, 246 Wis. 2d 67, 629 N.W.2d 698; and *Evelyn C.R. v. Tykila S.*, 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768. (I have written dissents or concurrences in these cases.) *But see State v. Lindell*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223 (*Strickland*'s probability sufficient to undermine the confidence in the outcome test used to determine ineffective assistance of counsel claim).

*Dyess* "conclude[d] that the test of prejudice as formulated in *Strickland* subsumes the various statements of the harmless error test that this court has used over the years." *Dyess,* 124 Wis. 2d at 545.[2] The *Strickland* case referred to is *Strickland v. Washington,* 466 U.S. 668, 693 (1984), and the test is whether "there is a *reasonable probability*" that "but for" the error, "the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694 (emphasis added). *Dyess* obviously adopted that test, but incorrectly assumed that there was no real difference between using "reasonable possibility" instead of "reasonable probability." 124 Wis. 2d at 544. Granted, *Dyess* applied its test by stating that "[i]n the present case, the *probability* to be weighed is whether the defendant would have been acquitted." *Id.* at 546 (emphasis added). However, as evident in the majority's opinion here today, Wisconsin courts have frequently used the term "reasonable possibility," and have not indicated that, in the context of a harmless error standard, possibility means probability.[3]

[2] *Dyess'* single test for harmless error standard has not been without controversy. *State v. Dyess,* 124 Wis. 2d 525, 370 N.W.2d 222 (1985). In addition to the majority opinion's discussion of *Dyess'* harmless error standard, authored by Justice Day, in *State v. Grant,* 139 Wis. 2d 45, 406 N.W.2d 744 (1987), Chief Justice Heffernan, Justice Day, Justice Abrahamson, and Justice Callow separately concurred on the *Dyess* issue. The controversy has continued. *See State v. Dodson,* 219 Wis. 2d 65, 92–98, 580 N.W.2d 181 (1998) (Crooks, J., concurring, joined by Justice Steinmetz and Justice Wilcox).

[3] According to my research, on few occasions since *Dyess* has this court, in a majority opinion, noted that reasonable possibility means reasonable probability. *See State v. Armstrong,* 223 Wis. 2d 331, 372 n.40, 588 N.W.2d 606 (1999); *see*

161

¶ 63. There can be no doubt that there is a significant difference between what is reasonably probable and what is reasonably possible. "A possibility test is the next thing to automatic reversal." *Wold v. State*, 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973).[4] While I agree that the focus should be "on whether the error 'undermine[s] confidence in the outcome,' " (*Dyess*, 124 Wis. 2d at 545 (*quoting Strickland*, 466 U.S. at 694)), if that error need only possibly undermine the confidence in the outcome, rather than probably, appellate courts, and circuit courts considering motions after verdict and post-convictions motions, will find themselves invading the purview of the jury. A cornerstone of the common law is deference to the jury, which is diluted by determining whether the alleged error possibly, and only possibly, may have affected the jury's decision.

¶ 64. I do not take issue with the term "reasonable possibility," so long as it is made clear that this term means reasonable probability, and probability is the standard to be applied. Accordingly, I offer the following test for harmless error, which makes clear that *Dyess'* use of the term "reasonable possibility" is intended to require "reasonable probability":

> Wisconsin Stat. § 805.18(2) provides that an error requires reversal only where it has "affected the substantial rights of the party" claiming error. We

---

*also State v. Huntington*, 216 Wis. 2d 671, 695–96, 575 N.W.2d 268 (1998). However, several court of appeals opinions have applied the *Dyess* harmless error test using the correct "reasonable probability" standard. *See, e.g., State v. A.H.*, 211 Wis. 2d 561, 569, 566 N.W.2d 858 (Ct. App. 1997); *State v. Joseph P.*, 200 Wis. 2d 227, 237, 546 N.W.2d 494 (Ct. App. 1996).

[4] *Wold*'s "reasonable probability" test for harmless error was replaced by *Dyess'* "reasonable possibility" test.

have long recognized that the focus of a court's analysis under this statute is whether, in light of the applicable burden of proof, the error is significant enough to "undermine confidence in the outcome" of the trial. *Dyess*, 124 Wis. 2d at 544–45. An error is significant enough to undermine confidence in the outcome if there is a reasonable probability of a different outcome without the error. *Dyess* made it clear that "probability" is substantially the same as "possibility" under Wisconsin law. *Id.* at 544.

¶ 65. The majority's opinion presents an apt example of how using a "reasonable possibility" test, as opposed to "reasonable probability" test, is problematic. The majority concludes that there is "potential" for jury confusion in using Wis JI—Civil 200, and, on that basis, "urge[s]" the Wisconsin Civil Jury Instructions Committee to review the instruction. Majority op. at ¶¶ 5, 55. If there is a "potential" that the jury would be confused, then it is "possible" that the jury was confused. *See Grant*, 139 Wis. 2d at 78 (Day, J., concurring) (one definition of possible is "having an indicated potential"). In turn, if there is a possibility that the jury was confused or mislead, then there was prejudicial error. Yet, this is not what the majority concluded.

¶ 66. Moreover, this analysis runs counter to other decisions from this court, as noted by the majority (at ¶ 52 n.6), which hold that "instructions are to be judged as a whole and prejudicial error will not be found unless the instructions 'would *probably, not possibly*, mislead the jury.' " *Victorson v. Milwaukee & Suburban Transp. Corp.*, 70 Wis. 2d 336, 357, 234N.W.2d 332 (1975) (quoting *Savina v. Wisconsin Gas Co.*, 36 Wis. 2d 694, 154 N.W.2d 237 (1967)) (emphasis added); *see also Brown v. Dibbell*, 227 Wis.

2d 28, 595 N.W.2d 358 (1999) ("where an instruction is erroneous and tends to mislead or probably misleads the jury, such misstatement of the law constitutes prejudicial error"). The majority opinion characterizes *Victorson's* standard as one of a "variety of ways" this court has "stated the standard for harmless error in jury instruction cases." Majority op. at ¶ 52 n.6. Yet, *Victorson* and *Savina* plainly foreclose the consideration of whether the error "possibly" misled the jury. Indeed, the effect of the majority's adoption of a "reasonable possibility" harmless error standard, without acknowledging that "reasonable possibility" means "reasonable probability," is to overrule *Savina, Victorson,* and *Brown v. Dibbell sub silentio.*

¶ 67. That Wisconsin courts have often used "reasonable possibility" rather than "reasonable probability" should not dissuade the court from correcting such missteps today. *See, e.g., State v. Sullivan* 216 Wis. 2d 768, 792, 576 N.W.2d 30 (1998); *State v. Alexander,* 214 Wis. 2d 628, 653, 571 N.W.2d 662 (1997). There is no time like the present—*dum fervet opus*[5]—when the court has before it five cases wherein it discusses the harmless error standard, to clarify *Dyess.*

¶ 68. For the reasons stated herein, I respectfully concur.

¶ 69. I am authorized to state that Justice JON P. WILCOX joins this opinion.

■■■■

---

[5] "While the action is fresh; in the heat of action." *Black's Law Dictionary* 518 (7th ed. 1999).